## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MARY CRAWFORD,**

**Plaintiff,**

v.

**ZALES DELAWARE, INC.,** *et al.*,

**Defendants.**

**Case No. 21–cv–15811–ESK–AMD**

**OPINION**

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on defendants Zales Delaware, Inc. (Zales) and Sandra Wozniak's motion for summary judgment (Motion). (ECF Nos. 39, 39–2 (Mov. Br.).) Plaintiff filed an opposition to the Motion (ECF Nos. 41, 46 (Opp'n Br.)), in response to which defendants filed a reply (ECF Nos. 43, 47 (Reply Br.)). For the following reasons, the Motion is **GRANTED.**

## I.    FACTUAL BACKGROUND

In July 2015, plaintiff was hired by Zales as a jewelry consultant in its Tinton Falls, New Jersey location. (ECF No. 41–3 (Crawford Dep.) p. 19.) At that time plaintiff was 61 years old, and she worked alongside Wozniak, a jewelry consultant ten years younger than her. (*Id.* pp. 4, 22; ECF No. 41–5 (Wozniak Dep.) p. 33.) Plaintiff took issue with Wozniak making comments about her sales tactics and saying that plaintiff manipulates customers. (Crawford Dep. p. 22.) In August 2017, plaintiff lodged a complaint against Wozniak for creating a hostile work environment that was causing her stress and anxiety. (*Id.* pp. 22, 23; ECF No. 39–11 (Summary of Crawford Compl.) p. 2.) Plaintiff reported to human resources that Wozniak was micromanaging her, critiquing her, and provoking situations to get her fired. (Summary of

Crawford Compl. p. 2.)   Plaintiff spoke with the then store manager and Philip Avitabile, Zales's district manager, about Wozniak's behavior.   (Crawford Dep. pp. 24, 25.)   In October 2017, Wozniak transferred to Zales's Jackson, New Jersey location.   (ECF No. 39–10 p. 3.)

In December 2018, Zales closed its Tinton Falls location.   (Crawford Dep. p. 20; *see* ECF No. 39–14 p. 2.)   The then store manager of the Tinton Falls location selected plaintiff as the sole employee from that location to transfer with her to Zales's Toms River, New Jersey location.   (Crawford Dep. p. 20.) There, plaintiff continued her role as a jewelry consultant and worked alongside Mary Delia, a full-time jewelry consultant in her fifties, and Michael Mazzonna and Linda LoFaro, part-time jewelry consultants in their twenties.   (Crawford Dep. p. 17; ECF No. 41–4 (Delia Dep.) pp. 6, 8; ECF No. 41–7 (Mazzonna Dep.) pp. 5, 21; ECF No. 41–8 (LoFaro Dep.) pp. 5, 7.)   Plaintiff, who was 64 years old at this time, was the oldest employee at the Toms River location and was offended by Mazzonna and LoFaro saying to her: "don't you want to retire," "don't you have to go to Delaware and … live in your house with your boyfriend," and "aren't you my mother's age."   (Crawford Dep. pp. 15, 16; Delia Dep. p. 6; Mazzonna Dep. p. 5; LoFaro Dep. p. 6.)   Plaintiff understood these comments as "accusing [her] of being old."   (Crawford Dep. p. 15.)   Although unclear whether plaintiff reported Mazzonna and/or LoFaro to human resources, plaintiff testified that she brought concerns about such comments to her assistant store manager.   (*Id.* pp. 15, 41.)   Mazzonna explained that such comments were made in the context of plaintiff sharing that she was renovating a house out of state and was ready for retirement.   (Mazzonna Dep. pp. 28, 29.) Plaintiff asserts that such comments were "constant," but the parties dispute the frequency.   (Crawford Dep. p. 15; ECF No. 43 pp. 25–27.)   Plaintiff cannot recall when such comments began or the context in which they were made. (Crawford Dep. pp. 15, 16.)

Despite plaintiff having been lauded for her high sales (Wozniak Dep. p. 16; ECF No. 41–19 pp. 2, 3), Zales received an anonymous complaint in May 2019 about plaintiff's ongoing, unethical behavior (ECF No. 39–20 (Anonymous Compl.) pp. 4, 5). Plaintiff was allegedly advertising promotions no longer running, advising customers that she could change prices to fit their range, collecting premium rewards, lying about company policies, and intervening in the sales of other jewelry consultants. (*Id.*) An investigation into plaintiff's conduct reported no such wrongdoing. (*Id.* pp. 2, 3.) Plaintiff was, however, later reported for having ordered a customer a diamond as a request for an appraisal in violation of company policy. (ECF No. 39–23 p. 2.) Avitabile advised plaintiff that this incident was being documented as potential insurance fraud and any other non-compliance could result in further documentation and possible termination. (ECF No. 39–24 pp. 2–4.) Plaintiff testified that what she was accused of, was not true. (Crawford Dep. p. 46.)

Complaints continued to be lodged against plaintiff for alleged misconduct. For example, LoFaro reported plaintiff for disrespecting and bullying her. (LoFaro Dep. pp. 11, 12.) Delia similarly advised Avitabile that plaintiff was causing problems by being aggressive and not a team player. (ECF No. 39–25 pp. 2, 3; Delia Dep. pp. 24, 25.)

In June 2019, Wozniak was transferred to Zales's Toms River location to act as assistant store manager. (Wozniak Dep. pp. 12, 30.) Problems, such as scheduling issues, commenced between Wozniak and plaintiff, and Wozniak reported plaintiff to Avitabile. (ECF No. 39–30 pp. 2, 3.) Plaintiff felt as though Wozniak "ganged up on" her and did nothing to address Mazzonna and LoFaro about how they were treating her. (Crawford Dep. pp. 14, 40, 41.) Delia testified that plaintiff's issues with Wozniak were consistent with what she observed. (Delia Dep. p. 24.) Wozniak, however, explained that she advised plaintiff to call human resources about her issues with her co-workers

and was also monitoring the situation for Avitabile, who was to decide how to resolve the issues.   (Wozniak Dep. pp. 35, 36.)   Although Zales's employees had the option to report incidents of discrimination to human resources using a confidential hotline or to their managers or assistant managers, who would then present the incidents to human resources, plaintiff found human resources to be intimidating and unresponsive.   (*Id.* p. 10; Crawford Dep. p. 14.) Plaintiff testified that she attempted to speak with human resources about the alleged discriminatory comments against her, but human resources "just didn't seem interested."   (Crawford Dep. p. 14.)

In August 2019, Avitabile requested from Zales's regional director permission to terminate plaintiff due to "numerous concerns" dating back to her Tinton Falls days.   (ECF No. 39–32 (Avitabile Request) pp. 2–4.)   These concerns included plaintiff: (1) being written up for excessive lateness and call outs; (2) entering the store after closing in violation of policy; (3) participating in an incident consistent with insurance fraud; (4) changing shifts without proper approval; (5) sharing personal information about other jewelry consultants with customers; (6) intervening with other jewelry consultants' sales; (7) having verbal altercations with her co-workers and displaying her anger at them in front of customers; (8) abusing premier rewards; (9) making disparaging comments about customers and making them cry; and (10) engaging in dishonest behavior.   (*Id.*)   In the presence of a witness, Avitabile terminated plaintiff's employment with Zales on August 10, 2019.   (Crawford Dep. pp. 41, 42; ECF No. 41–6 (Avitabile Dep.) p. 20.)   Plaintiff was presented with a written performance discussion record, which Avitabile and the witness signed, but plaintiff refused to sign.   (ECF No. 39–34 p. 2; ECF No. 39–35 p. 2.) On August 15, 2019, plaintiff lodged a complaint with Zales's employees relations solutions center for being terminated due to incorrect information and requested termination counseling.   (ECF No. 39–36 p. 2.)   While the parties

dispute whether Zales responded to plaintiff's termination complaint, plaintiff believes that her "life" was taken from her and that her health suffered. (*Id.*; Crawford Dep. pp. 45, 46.) Zales did not hire a replacement for plaintiff but rather had her job responsibilities absorbed by the remaining Toms River employees. (Wozniak Dep. p. 30; Delia Dep. p. 10; ECF No. 40–1 pp. 2, 3.)

## II. PROCEDURAL HISTORY

On March 18, 2021, plaintiff commenced this New Jersey Law Against Discrimination (NJLAD) action in the Superior Court of New Jersey. (ECF No. 1–1 (Compl.).) Plaintiff's two-count complaint raises claims against Zales and Wozniak for disparate treatment, hostile work environment, discrimination, unlawful termination due to age, and retaliation/reprisal. (*Id.* pp. 8–13.) On August 20, 2021, Wozniak, with consent from Zales, removed this action to this Court. (ECF No. 1.) The parties proceeded with discovery (*see* ECF Nos. 6, 22), and pursuant to the Court's briefing schedule (*see* ECF No. 36), the Motion and all related papers were filed on September 11, 2024. (ECF Nos. 39–43.) At the Court's direction (ECF No. 44), plaintiff refiled on September 18, 2024 her opposition brief to comply with Local Civil Rule 56.1(a) and my Rules and Preferences (Opp'n Br.). Defendants filed a revised reply brief on September 25, 2024. (Reply Br.)

## III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant "bears the burden of demonstrating the absence of any genuine issues of material fact." *Aman v. Cort Furniture Rental*

*Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).   The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial.   *Anderson*, 477 U.S. at 249.   In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," and credibility determinations are for the fact finder.   *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV.  DISCUSSION

The NJLAD "makes it unlawful '[f]or an employer, because of the ... age ... of any individual ... to discriminate against such individual in compensation or in terms, conditions, or privileges of employment.'"   *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 937 (3d Cir. 2009) (alterations in original) (quoting N.J. Stat. § 10:5–12(a)).   Employer is defined as "one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees in bankruptcy, receivers, and fiduciaries."   N.J.S.A. § 10:5–5(a), (e)).   "An NJLAD plaintiff may prove discrimination or retaliation according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)."   *Id.*   "Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a *prima facie* case of unlawful

discrimination." *Id.* "If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action." *Id.* "Once the employer meets its relatively light burden, the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual." *Id.* To demonstrate pretext, the plaintiff:

> generally must submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Id.* (quoting *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir.1994)).

## A.  Age Discrimination

"[T]o make a prima facie case of age discrimination under the NJLAD, a plaintiff must demonstrate that she (1) is a member of the protected class, (2) was qualified for the position held, (3) suffered an adverse employment action, and (4) 'ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.'" *Srgo,* 331 F. App'x at 938 (quoting *Monaco v. American General Assur. Co.,* 359 F.3d 296, 300 (3d Cir.2004)). Here, only the fourth element is in dispute. (Mov. Br. pp.20–26.)

In establishing the fourth element, "[t]he focal question is not necessarily how old [or] young the claimant or [her] replacement was, but rather whether the claimant's age, in any significant way, 'made a difference' in the treatment [she] was accorded by [her] employer." *Arenas v. L'Oreal USA Prods., Inc.*, 790 F. Supp. 2d 230, 237 (D.N.J. 2011), *aff'd*, 461 F. App'x 131 (3d Cir. 2012) (alterations except second in original) (quoting *Young v. Hobart West Grp.*, 879 A.2d 1063, 1069 (N.J. Super. Ct. App.Div.2005)); *see Maxfield v. Sinclair Int'l.*, 766 F.2d 788, 792 (3d Cir.1985) (holding that the "the fourth element of the

7

*McDonnell Douglas* test could be satisfied by proof of either replacement by someone outside the protected class or by someone younger or by other proof that the discharge was because of age.") Whereas here, plaintiff's job responsibilities were subsumed by other employees and no replacement was hired, the question before me is whether plaintiff's age was the but-for cause of her termination.

The fact that plaintiff's work was distributed to younger employees "is insufficient on its own … to raise an inference of age discrimination." *Davis v. Supervalu, Inc.*, No. 13–00414, 2014 WL 5320171, at *7 (D.N.J. Oct. 16, 2014). Plaintiff thus has the burden to identify "evidence in the record sufficient to raise [such] an inference." *Id.* In support of her position, plaintiff relies upon the comment Wozniak made about wanting to learn how to sell like her because she is good at manipulating customers. (Opp'n Br. p. 21.) Plaintiff also relies upon Mazzonna and LoFaro's comments asking her about her retirement plans. (*Id.*) Wozniak's comment has nothing to do with plaintiff's age and while Mazzonna and LoFaro refer to plaintiff being eligible for retirement, their comments do not establish that plaintiff was terminated from Zales because of her age.

Furthermore, Wozniak, Mazzonna, and LoFaro were not involved in the decision to terminate plaintiff. (*See* Avitabile Request pp. 2–4.) That decision was made by Avitabile and Zales's regional director and based upon various incidents of misconduct. (*Id.*) Plaintiff argues that under "cat's paw" liability, because Avitabile relied on Wozniak, Mazzonna, and LoFaro's complaints to arrive at his decision, their discriminatory animus should be given great weight. (Opp'n Br. p. 24 n.7.) However, under this theory of liability, "an employer may be liable for employment discrimination if the source of illegal animus was not the final employment decision-maker but rather another employee whose animus proximately caused the adverse

employment action at issue in the case." *Bowie v. Costco Wholesale Corp.*, No. 16–05808, 2019 WL 3283045, at *10 (D.N.J. July 22, 2019) (quoting *Mason v. Se. Pa. Trans. Auth.*, 134 F. Supp. 3d 868, 873 (E.D. Pa. 2015)).   In other words, in a "cat's paw" case, the decision-makers are found to have terminated an employee "on the basis of a false premise because the information on which they relied was tainted by … animus."   *Id.* (quoting *Mason*, 134 F. Supp. 3d at 874.)

Plaintiff fails to establish that Zales's decision to terminate her was based on a false premise or that Zales terminated plaintiff notwithstanding having no reason to believe the allegations made against her.   *See Frymoyer v. E. Penn Mfg. Co., Inc.*, 757 F. App'x 97, 101 (3d Cir. 2018).   Despite an investigation into an anonymous complaint from May 2019 uncovering no wrongdoing, plaintiff had a history, dating back to when she was employed at the Tinton Falls location, of not following Zales's policies.   (Anonymous Compl. pp. 2, 3; *see* Avitabile Request pp. 2–4.)   Other than plaintiff presenting her own subjective belief (Crawford Dep. p. 46), there is neither any evidence demonstrating that the complaints about plaintiff's failure to comply with Zales's policies were false nor anything in the record from which a reasonable jury could conclude that plaintiff's age was a factor in the decision to terminate her.   Accordingly, I find that plaintiff cannot establish a *prima facie* showing of age discrimination.

### B.   <u>Hostile Work Environment</u>

To establish a NJLAD hostile work environment claim, a plaintiff "must demonstrate that the defendant's 'conduct (1) would not have occurred but for the employee's [protected characteristic]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [person with that characteristic] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'"   *O'Shea v. Twp. of Hillside*, No. 20–07027, 2022 WL 17829402, at *3 (D.N.J. Dec. 21, 2022) (alterations in original) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)).   "[W]hether

an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Factors to be considered include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,' but 'no single factor is required.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "Hostile work environment claims are 'based on the cumulative effect of individual acts' typically occurring over 'a series of days or perhaps years.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002)). The workplace must be "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).

Plaintiff argues that Mazzonna and LoFaro's comments about her age and inquiries into her retirement plans sufficiently establish this claim. (Opp'n Br. pp. 25–29.) "[A] single event can create a hostile work environment, if extreme enough." *Hayden v. Allegheny Health Network*, No. 21–00525, 2024 WL 866346, at *18 (W.D. Pa. Feb. 29, 2024). "However, such instances are extremely fact specific." *Id.* It is well established that age-related remarks similar to ones made here, such as calling a plaintiff an "old lady" or asking "isn't retirement looking good" or "don't you want to retire," are neither physically threatening nor humiliating such that a plaintiff's conditions of employment were altered. *Whitesell v. Dobson Comm'n*, 353 Fed. App'x 715, 717 (3d Cir. 2009); *Jenkins v. Knowledge Learning Corp.*, No. 10–05058, 2013 WL 3465191, at *5 (D.N.J. July 10, 2013).[1] At no point does plaintiff assert

---

[1] Plaintiff argues that because her claims are raised under NJLAD, these cases are distinguishable because they involve Age Discrimination Act (ADA) claims.

how Mazzonna and LoFaro asking her whether she is ready for retirement and commenting about her age altered the conditions of her employment. *See Nitkin v. Main Line Health*, 67 F.4th 565, 571–73 (3d Cir. 2023). Furthermore, although plaintiff argues that there is a genuine issue of material fact as to the frequency that Mazzonna and LoFaro made such comments (Opp'n Br. p. 26 n. 8), plaintiff fails to point to concrete evidence to support her claim that they were "constantly" made. "Courts must consider evidence that particular comments were made repeatedly." *Nitkin*, 67 F.4th 565, 571 n. 3. "[C]onclusory allegations of inappropriate remarks are inadequate at the summary judgment stage." *Id.* Accordingly, plaintiff's arguments in support of this claim fails.

### C.   Retaliation

"[A] plaintiff makes out a *prima facie* case of retaliation by showing '(1) that [s]he engaged in a protected activity; (2) that [s]he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action.'" *Sgro*, 331 F. App'x at 939 (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). The protected activities relevant to this claim are plaintiff's complaints about Wozniak, Mazzonna, and LoFaro. (Summary of Crawford Compl. p. 2; Crawford Dep. pp. 14, 40, 41.) Plaintiff had reported Wozniak to human resources in August 2017 (*see* Summary of Crawford Compl. p. 2), and raised issues about Mazzonna and LoFaro to Wozniak around June 2019 (Crawford Dep. pp. 14, 40). Plaintiff expressly testified that she did not "complain[]" about Mazzonna and LoFaro to Wozniak but rather "brought concerns." (*Id.*

---

NJLAD claims are, however, governed by the same standards as the ADA. *See, e.g.*, *Brown v. City of Long Branch*, 380 F. App'x 235, 238 (3d Cir. 2010).

p. 41.)   In August 2019, plaintiff was terminated from Zales.   (Crawford Dep. pp. 41, 42; Avitabile Dep. p. 20.)

"The amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation."   *Shellenberger v. Summit Bancorp., Inc.*, 318 F.3d 183, 189 (3d Cir.2003).   Plaintiff does not expressly assert what adverse employment action she suffered from reporting Wozniak. (*Id.* pp. 7, 8.)   Instead, she focuses on the fact that she was terminated and that Wozniak allegedly "waged a concerted campaign of retaliation against plaintiff" by having "increased the frequency of her discriminatory commentary and beg[inning] to overly scrutinize plaintiff's work."   (Compl. ¶¶ 22–24; Crawford Dep. p. 41.)   Based upon plaintiff's mere conclusory statements to establish a causal connection between her protected activity and the adverse employment action taken against her, a reasonable juror cannot find that plaintiff was retaliated against.   Since Avitabile presented a list of reasons to terminate plaintiff, none of which were pretextual (*see* Avitabile Request pp. 2–4), this claim also fails.

### D.   Aiding and Abetting

In addition to holding an "employer "liable, the NJLAD also provides individual liability of a supervisor through its aiding and abetting mechanism. *O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 467 (D.N.J. 2016). Pursuant to the NJLAD, it is unlawful "[f]or any person, whether an employer or employee ... to aid, abet, incite, compel or coerce any of the acts forbidden under [it]."   *Id.* (quoting N.J.S.A. §10:5–12(e)).   "To conclude that an individual person is liable under an aiding and abetting theory there must be "active and purposeful conduct" and a plaintiff must show:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal

> or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation.

*Id.* (quoting *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. Sup. Ct. 2004)). "Courts construe the aiding and abetting theory broadly, such that an individual supervisor can aid and abet his own conduct." *Id.*

Here, plaintiff argues that Wozniak's discriminatory behavior against her began before Wozniak was deemed an assistant manager. (Opp'n Br. p. 45.) Plaintiff emphasizes that Wozniak treated the younger Zales employees differently, and that she created a hostile environment by ignoring plaintiff's issues with her co-workers. (*Id.*) Beyond making conclusory statements and arguing that Delia's testimony confirms her position (*id.*; Delia Dep. p. 24), plaintiff fails to establish this claim. Furthermore, absent a finding of liability as to Zales, liability against Wozniak fails. *See Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 307 n.15 (3d Cir. 2004) (noting that "inasmuch … summary judgment [is granted] to the corporate defendants, any claim … brought against the individual defendants for aiding and abetting fails as well").

## V.   CONCLUSION

For the reasons stated above, the Motion is **GRANTED**.


   /s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated:  April 28, 2025